UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
EVAN ARDENTE,                  )
                               )
          Plaintiff,           )
                               )
     v.                        )    C.A. No. 10-362 S
                               )
THE STANDARD FIRE INSURANCE    )
COMPANY,                       )
                               )
          Defendant.           )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

I.  Facts[1]

     In  1999,  Evan  Ardente,  the  Plaintiff  in  this  case,
purchased a 1997 580 Super Sun Sport Sea Ray yacht (the "Yacht")
from its original owner.  During the period of time relevant to
this suit, the Yacht was insured by the Defendant, Standard Fire
Insurance Company ("Standard").

     The  insurance  policy  covers,  among  other  things,
"accidental  direct  physical  loss  or  damage  caused  by  an
occurrence" to the Yacht and auxiliary equipment.  (Ex. A to
Parties' Joint Statement of Undisputed Facts in Supp. of their

---

     [1] The facts are derived from the parties' joint statement of
undisputed  facts  and  are  not  disputed,  unless  noted  as  such.
(See Parties' Joint Statement of Undisputed Facts in Supp. of
their Cross-Mots. for Summ. J. ("SUF"), ECF No. 23.)

Cross-Mots. for Summ. J. ("SUF"), ECF No. 23-1.)  This grant of coverage is, however, subject to several exclusions, two of which are of particular relevance in the instant case.  The policy excludes loss caused by "[d]efects in manufacture, including defects in construction, workmanship and design other than latent defects as defined in the policy."  (Id.)  The policy separately excludes loss caused by latent defects, but it goes on to state that "any resulting direct physical loss or damage to your yacht resulting from the latent defect will be covered."  (Id.)  The policy defines "latent defect" as "a hidden flaw inherent in the material existing at the time of the original building of the yacht, which is not discoverable by ordinary observation or methods of testing."  (Id.)

During the summer of 2009, Ardente began to experience problems with the Yacht.  He noticed that the Yacht's top speed had decreased and that the Yacht was listing to starboard.  In November of 2009, Ardente retained Stafford Marine Services, LLC ("Stafford") to perform a marine survey of the Yacht.  After conducting a survey, Stafford concluded that water intrusion had caused damage to the Yacht's hull and deck.

Around November 16, 2009, Ardente presented a claim to Standard for the damage to the Yacht.  On November 20, 2009, Standard staff surveyor Christopher MacDougall inspected the Yacht and found high moisture levels in the hull and deck.

2

MacDougall reported his findings to Standard and recommended that Standard obtain a laminations expert to assist in determining the cause of the water intrusion. Standard retained Stephen J. Burke, a naval architect with Burke Design, LLC ("Burke") to further inspect the Yacht. Burke's initial inspection, conducted on December 15, 2009, revealed high moisture levels. At Burke's recommendation, Standard hired Mark Ashton of Independent Marine Systems to conduct a thermal infrared survey of the Yacht. Ashton, like Stafford, MacDougall, and Burke before him, found high moisture levels in the Yacht. Burke, based on his own inspection of the boat and review of the thermal infrared survey, reported to Standard that the damage was caused by "poor composite manufacturing techniques employed during the original construction of the vessel." More specifically, Burke concluded that "the failure of the builder to terminate the (balsa) core material, and substitute solid composite laminate, [in the area of] hardware, equipment, fasteners and related installations, allowed moisture to enter the hull and deck laminates at many locations on the vessel." (SUF ¶ 16.)

In a properly built boat, port lights and other hardware installed into the hull should be surrounded by solid laminate. This is because solid laminate is a dense material that does not transmit moisture. Balsa wood, on the other hand, is not water

proof.  If it gets wet, it can rot.  In Ardente's Yacht, balsa wood is present in the areas surrounding installations in the hull.  This poor manufacturing technique caused the damage to the Yacht.  (See SUF ¶¶ 19-25; Exs. B, D, and F to SUF, ECF Nos. 23-2, 23-4, and 23-6.)

On February 17, 2010, Standard conducted a conference call with its claims personnel and determined that the damage to the Yacht fell within the policy exclusion for manufacturing defects.  On February 19, 2010, Standard employee Greg Forester called Ardente to explain Standard's position.  During this call, Ardente told Forester that he believed the loss was caused by a latent defect.  Forester responded, "it is a construction issue and that is our position."  (SUF ¶ 33.)  Finally, in a letter dated February 25, 2010, Standard denied Ardente's claim.  At no point did Standard discuss whether the damage to Ardente's Yacht may have been the result of a latent defect.  (SUF ¶ 34; Pl.'s Statement of Additional Undisputed Facts in Supp. of his Mot. for Summ. J. ("Pl.'s SUF") ¶¶ 3-5, ECF No. 22.)

Ardente brought suit against Standard alleging breach of contract, breach of implied covenant of good faith and fair dealing,[2] and bad faith failure to pay an insurance claim.  (See

---

[2] Ardente's claim for breach of the implied covenant of good faith and fair dealing "is merely a recitation of an element of bad faith . . . and is not a separate and distinct claim."

Compl., ECF No. 1-1.)   Ardente also sought declaratory judgment. (Id.)   Now before the Court are the parties' cross-motions for summary judgment.[3]

II. Discussion

Summary judgment is appropriate when, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; see also Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009).

In the instant case, there is no factual dispute concerning the cause of the damage to the Yacht: the damage occurred because the hull was constructed in such a way that the holes where the fixtures attached to the boat passed through both laminate and balsa wood; because of this, water intruded and saturated the balsa wood over time.   The only dispute concerns whether the loss sustained is covered by the insurance policy. This issue may be properly resolved by the Court at the summary

---

Skaling v. Aetna Ins. Co., 799 A.2d 997, 1015 (R.I. 2002).   For this reason, this Court does not separately discuss this claim.

[3] In its answer, Standard raised various affirmative defenses that it failed to develop in its summary judgment papers.   (See Answer 5-6, ECF No. 5.)   These affirmative defenses are waived.   See Am. States Ins. Co. v. LaFlam, 808 F. Supp. 2d 400, 405 n.9 (D.R.I. 2011) (granting the plaintiff's motion for judgment on the pleadings and refusing to consider affirmative defenses raised in the defendant's answer but not developed in her motion papers).

judgment stage.  See Littlefield v. Acadia Ins. Co., 392 F.3d 1, 6 (1st Cir. 2004) ("The parties contest only the interpretation of the yacht insurance policy's exclusion provisions.  Whether there is any ambiguity in the exclusion provisions is a question of law for the court to determine.").

The parties agree that the use of balsa wood in the areas surrounding installations in the hull is a manufacturing defect. They also agree that, if a particular manufacturing defect qualifies as a latent defect, the exclusion for manufacturing defects does not apply.  (See Pl.'s SUF ¶ 2.)  Indeed, this proposition is clear from the plain language of the policy which excludes manufacturing defects "other than latent defects." (Ex. A to SUF.)  Thus, whether the policy covers the damage to the Yacht depends upon whether that damage resulted from a latent defect.

The policy defines the term "latent defect" as "a hidden flaw inherent in the material existing at the time of the original building of the yacht, which is not discoverable by ordinary observation or methods of testing." (Id.)  The parties agree that the balsa wood was present in the areas surrounding installations at the time of the Yacht's original construction and that this condition was not discoverable by ordinary observation or methods of testing. (See SUF ¶¶ 26-27.)  Thus, the only disputed issue is whether the damage to Ardente's Yacht

6

resulted from a "flaw inherent in the material" within the meaning of the policy.

The parties agree that Rhode Island law should govern the Court's analysis of this issue.  While federal maritime law applies to the interpretation of yacht insurance policies, "[s]tate law may supplement maritime law when maritime law is silent or a local matter is at issue."  <u>Windsor Mount Joy Mut.</u> <u>Ins. Co. v. Giragosian</u>, 57 F.3d 50, 54 (1st Cir. 1995).  Because there is "no federal statute or federal rule governing the interpretation" of maritime insurance contracts, state law applies in this case.  <u>See Littlefield</u>, 392 F.3d at 6-7 (applying New Hampshire law to interpret a yacht insurance policy).

Under Rhode Island law, if the terms of an insurance policy are unambiguous "no further judicial construction is needed and the parties are bound by the terms as they are written." <u>Narragansett Jewelry Co. v. St. Paul Fire and Marine Ins. Co.</u>, 526 F. Supp. 2d 245, 247 (D.R.I. 2007) (citing <u>St. Paul Fire and</u> <u>Marine Ins. Co. v. Warwick Dyeing Corp.</u>, 26 F.3d 1195, 1199 (1st Cir. 1994)).  "On the other hand, if the policy, as written, is ambiguous or its terms can be reasonably interpreted in more than one way, the policy 'will be construed liberally in favor of the insured and strictly against the insurer.'" <u>Id.</u> (quoting <u>Warwick Dyeing Corp.</u>, 26 F.3d at 1199).  However, "a court

7

should not, through an effort to seek out ambiguity when there is no ambiguity, make an insurer assume a liability not imposed by the policy." <u>Id.</u> (quoting <u>McGowan v. Conn. Life Ins. Co.</u>, 289 A.2d 428, 429 (R.I. 1972)).

In the present case, Ardente argues that the policy's use of the word "inherent" in its definition of latent defect suggests that such a defect must be "something intrinsic or characteristic to the material." (<u>See</u> Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. 5, ECF No. 27.) Indeed, "inherent" is defined as "involved in the constitution or essential character of something : belonging by nature or habit : intrinsic." <u>Merriam-Webster Dictionary</u>, <u>available at</u> http://www.merriam-webster.com/dictionary/inherent. Because susceptibility to rot is a characteristic of all balsa wood, Ardente contends that it constitutes a latent defect within the meaning of the policy.[4]

---

[4] Standard cites <u>Carrier v. RLI Ins. Co.</u>, 854 F. Supp. 2d 1324 (S.D. Ga. 2010), <u>aff'd</u>, 463 F. App'x 824 (11th Cir. 2012), and <u>Egan v. Washington Gen. Ins. Corp.</u>, 240 So. 2d 875 (Fla. Dist. Ct. App. 1970), in support of its contention that Ardente's interpretation of the policy is unreasonable, but these cases are of little help. In <u>Carrier</u>, the court held that a policy exclusion for latent defects did not modify a completely separate exclusion for manufacturing defects, which made no mention of latent defects. <u>See</u> 854 F. Supp. 2d at 1326 (quoting policy). In the present case, by contrast, the policy excludes manufacturing defects "other than latent defects." <u>Egan</u>, unlike the present case, involved a policy which did not expressly define "latent defect." <u>See</u> 240 So. 2d at 876 (quoting policy).

Standard counters by emphasizing the policy's use of the word "flaw."  It argues that a "flaw," unlike a characteristic, cannot be something common to all balsa wood.  (See Standard Fire Insurance Company's Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Cross-Mot. for Summ. J. ("Def.'s Mem.") 13, ECF No. 26.)  A "flaw" is defined as "a feature that mars the perfection of something; defect; fault."  French Cuff, Ltd. v. Markel Am. Ins. Co., 322 F. App'x 669, 673 (11th Cir. 2009) (quoting The Random House Dictionary 503 (rev. ed. 1980)). Here, susceptibility to rot is a characteristic of balsa wood, but it is not a flaw.  The balsa wood used in Ardente's Yacht was perfectly good balsa wood notwithstanding its susceptibility to rot.[5]

There is a fundamental contradiction in the policy's definition of latent defect as a "flaw inherent in the material."  The word "inherent" requires that a latent defect be characteristic of or intrinsic to the material.  The word "flaw"

---

[5] Ardente relies on French Cuff in arguing that his interpretation of the policy language is reasonable.  This reliance is misplaced.  In French Cuff, the Eleventh Circuit held, on similar policy language, that the use of foam that was "too thin or friable" in a yacht's hull constituted a latent defect under a reasonable reading of the policy.  French Cuff, Ltd. v. Markel Am. Ins. Co., 322 F. App'x 669, 673 (11th Cir. 2009).  The present case is different than French Cuff because there is no problem with the material used in the construction of the hull beyond those features characteristic to all pieces of that material.  While the thinness of the foam in French Cuff could reasonably be construed as a "flaw," the susceptibility of all balsa wood to rot cannot be reasonably construed as a flaw.

imposes the exact opposite requirement.  It includes problems with a specific piece of material, but not problems characteristic of the material itself.  In short, giving the terms their plain and reasonable meaning, there can be no such thing as an inherent flaw.

Contradictory provisions in an insurance contract "must be interpreted to reflect the reasonable expectations of the insured." Stratford Sch. Dist. v. Emp'rs Reinsurance Corp., 105 F.3d 45, 47 (1st Cir. 1997) (citing Commercial Union Assurance Co. v. Gilford Marina, Inc., 408 A.2d 405, 407 (N.H. 1979)). Here, the policy language at issue contains a grant of coverage, an exclusion for losses caused by manufacturing defects, and an exception to that exclusion.  It would be inconsistent with the insured's reasonable expectations to hold that, because there is no such thing as an "inherent flaw," the exception to the manufacturing defects exclusion is entirely meaningless.  See Gilford, 408 A.2d at 407 (interpreting a policy with contradictory provisions in a manner that gave effect to an exception to a coverage exclusion).  If Standard intended to exclude all manufacturing defects from coverage without exception, it "should have so stated in plain and simple language." Id. at 408.

A reasonable insured would expect the term "latent defect" to include the use of an otherwise appropriate boat building

10

material in a flawed manner where such improper use is not
discoverable by ordinary observation.    The parties agree that
the areas of the Yacht's hull surrounding installations should
have been constructed from solid laminate rather than balsa
wood.    The use of balsa wood in these areas was a flaw in the
construction of the Yacht, even if it was not a flaw in the
underlying material itself.    Here we have what amounts to a
defective manufacturing technique; the flaw results from a
combination of an inherent characteristic of balsa wood, i.e.
its susceptibility to rot, and the placement of that material in
and around the boat's fixtures.    Thus, while there is no such
thing as a "flaw inherent in the material," this case does
involve a flaw in the construction of the hull resulting from an
inherent characteristic of balsa wood.    For this reason, the
Court interprets the policy language to cover the loss to
Ardente's Yacht.

　　　Standard contends that the loss to Ardente's Yacht is
excluded from coverage even if this Court finds that it was
caused by a "latent defect."    This is because, in addition to
excluding manufacturing defects, the policy has a separate
exclusion for latent defects.    The policy does, however, cover
"any resulting direct physical loss or damage" from latent
defects.    (Ex. A to SUF.)    Standard argues that, to the extent
the costs of repair in this case are necessary to remove wet

balsa wood from the hull, those costs would go to repairing the latent defect itself rather than damage resulting from the latent defect.     This reasoning relies on a fundamental misconception of the latent defect in this case.  As previously explained, the "latent defect" is the use of balsa wood in areas surrounding hull installations.  The loss caused when water infiltrated the hull and was absorbed by the balsa wood constitutes a loss resulting from that defect.  This, in turn, is distinct from the underlying latent defect itself.  To put it another way, replacing the material around the fixtures would repair the defect; replacing the damaged balsa wood repairs the damage resulting from the defect.[6]

Ardente also brings a claim of bad faith refusal to pay an insurance claim under R.I. Gen. Laws § 9-1-33.  That section provides, in pertinent part:

> Notwithstanding any law to the contrary, an insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing the policy when it is alleged insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of the policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under the contract of insurance. In any action brought pursuant to this section, an insured may also make claim for

---

[6] Because Ardente moves for summary judgment as to liability only, this Court does not consider the amount of damages he is entitled to recover.  (See Pl.'s Mot. for Summ. J. 1, ECF No. 21; Cross-Mots. for Summ. J. Hr'g Tr. 36.)  Rather, the Court merely holds that the loss to Ardente's Yacht does not fall within the policy's exclusion for latent defects.

> compensatory damages, punitive damages, and reasonable
> attorney fees.   In all cases in which there has been
> no trial in the Superior Court on or before May 20,
> 1981, the question of whether or not an insurer has
> acted in bad faith in refusing to settle a claim shall
> be a question to be determined by the trier of fact.

R.I. Gen. Laws § 9-1-33(a).   Notwithstanding the statute's explicit reservation of the issue of bad faith failure to settle for the trier of fact, the Rhode Island Supreme Court has recognized that summary judgment is, in some circumstances, appropriate on § 9-1-33 claims.   See Lewis v. Nationwide Mut. Ins. Co., 742 A.2d 1207, 1209-10 (R.I. 2000) (rejecting the plaintiff's argument that summary judgment was inappropriate because § 9-1-33 directs that bad faith is an issue for the trier of fact); see also Prudential Ins. Co. of Am. v. Tanenbaum, 167 A. 147, 149 (R.I. 1933) (affirming the dismissal of a bill in equity seeking payment under two life insurance policies on the grounds that the insured made material mistatements in procuring those policies despite R.I. Gen. Laws § 27-4-10, which provides that the materiality of such a misstatement "shall be a question for the jury").   Additionally, it is notable that the relevant statutory language is explicitly limited to bad faith failure "to settle a claim."   R.I. Gen. Laws § 9-1-33(a) (emphasis added).   This portion of the statute does not, on its face, apply to bad faith failure to pay a claim.

13

The Rhode Island Supreme Court has held that "not every refusal to pay amounts to insurer bad faith. A plaintiff must demonstrate an absence of a reasonable basis in law or fact for denying the claim or an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation." Skaling v. Aetna Ins. Co., 799 A.2d 997, 1012 (R.I. 2002). In the present case, Ardente does not contend that Standard's interpretation of the policy was unreasonable. Rather, Ardente's bad faith claim is predicated upon Standard's alleged failure to perform an adequate investigation.

Ardente has failed to create a genuine issue of fact with respect to whether Standard's response to his claim constituted "an intentional or reckless failure to properly investigate the claim and subject the result to cognitive evaluation."[7] Just days after Ardente filed his claim, Standard's staff surveyor,

---

[7]   In his motion for summary judgment papers, Ardente purports to reserve the right "to conduct discovery on the bad faith claim which, in the ordinary course, would be severed and tried separately from the breach of contract action." (Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 15 n.4., ECF No. 21-1.) As authority for this reservation, Ardente cites Corrente v. Fitchburg Mut. Fire Ins. Co., 557 A.2d 859 (R.I. 1989). In Corrente, the court held that "[s]ince the burden of proof on a bad-faith claim is so formidable . . . it is inherently prejudicial for a trial justice to decline to sever that claim from a breach-of-contract claim." Id. at 862. The Corrente decision, however, predates the Rhode Island Supreme Court's decision in Skaling, which rendered the burden of proof on a bad faith claim far less "formidable" than it once was. Additionally, in the present case, unlike in Corrente, the parties made no motion to sever.

MacDougall, inspected the Yacht.   Later, Standard retained both Burke and Ashton to conduct further investigation.   Plaintiff's expert, Halsey C. Herreshoff, agreed that the reports prepared by Burke and Ashton were "thorough."   (Ex. I to Def.'s Mem.) The thoroughness of Standard's investigation concerning the cause of the damage to Ardente's Yacht distinguishes the present case from Skaling.

Ardente argues that the Court should grant summary judgment in his favor on the bad faith claim because there is no evidence that Standard ever discussed or analyzed whether the manufacturing defect it discovered in the Yacht was also a latent defect.   However, because Standard's thorough investigation did not reveal any "flaw" in the balsa wood, the policy's requirement of a "flaw inherent in the material" was clearly not met.   Standard was, thus, under no obligation to debate the question with Ardente.   A difference of opinion as to policy language interpretation does not a bad faith investigation make.

III. Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment as to liability is GRANTED with respect to his breach of contract claim.   Defendant's motion for summary judgment is GRANTED with respect to Plaintiff's claims of breach

15

of implied covenant of good faith and fair dealing and bad faith

failure to pay an insurance claim.

IT IS SO ORDERED.

*/s/ William E. Smith*

William E. Smith
United States District Judge
Date: November 27, 2012